MATTER OF BURRIS

In Visa Petition Proceedings

A-20964032

*Decided by Board June 2, 1976*

Beneficiary was born in the United States and became a citizen of Canada thereby expatriating himself. Under section 202(b)(3) of the Immigration and Nationality Act, beneficiary is considered to be a native of Canada, an independent foreign country of the Western Hemisphere, for immigration purposes and thus a special immigrant as defined by section 101(a)(27)(A) of the Act. Therefore, beneficiary is ineligible for fifth preference classification under section 203(a)(5) of the Act, and the visa petition filed by his United States citizen brother on his behalf to accord him such classification was denied.

ON BEHALF OF PETITIONER:
Charles Gordon, Esquire
931 Investment Building
1511 K Street, N.W.
Washington, D. C. 20005

ON BEHALF OF SERVICE:
Paul C. Vincent
Appellate Trial Attorney

The United States citizen petitioner applied for preference status for the beneficiary as his brother under section 203(a)(5) of the Immigration and Nationality Act. In a decision dated January 25, 1975 the district director denied the petition. The petitioner has appealed. The appeal will be dismissed.

The beneficiary was born in the United States. After engaging in business for several years in Canada, he became a Canadian citizen, thereby losing his United States citizenship. Now he wishes to receive an immigrant visa, make his home once more in the United States and eventually regain his United States citizenship.

The issue is whether the beneficiary, who is now a citizen of Canada, is eligible for a preference under section 203(a)(5) of the Act, as a brother of a United States citizen.

The district director concluded that under section 202(b)(3) of the Act, the beneficiary must be treated as though he were a Canadian by birth. As such, he would be eligible *only* for a "special immigrant" visa under section 101(a)(27)(A). Counsel for the petitioner contends that neither section 202 nor section 101(a)(27) is applicable to the case.

We turn first to section 202. That section provides in pertinent part that—

Sec. 202(a) No person shall receive any preference or priority or be discriminated against in the issuance of an immigrant visa because of his race, sex, nationality, place of birth, or place of residence, except as specifically provided in section 101(a)(27), section 201(b), and section 203: *Provided,* That the total number of immigrant visas and the number of conditional entries made available to natives of any single foreign state under paragraphs (1) through (8) of section 203(a) shall not exceed 20,000 in any fiscal year . . .

(b) Each independent country . . . other than the United States and its outlying possessions shall be treated as a separate foreign state for the purposes of the numerical limitation set forth in the proviso to subsection (a) of this section when approved by the Secretary of State. All other inhabited lands shall be attributed to a foreign state specified by the Secretary of State. *For the purposes of this Act* the foreign state to which an immigrant is chargeable shall be determined by birth within such foreign state except that . . . (3) an alien born in the United States shall be considered as having been born in the country of which he is a citizen or subject, or if he is not a citizen or subject of any country then in the last foreign country in which he had his residence as determined by the consular officer. [Emphasis added.]

According to the petitioner's counsel, section 202 is concerned solely with the issue of limiting to 20,000 per year the allocation of visas for each *single foreign state* within the annual worldwide quota of 170,000.[1] Since the beneficiary has never been a citizen or subject of a country subject to the 20,000 limitation, counsel concludes that section 202(b)(3) is irrelevant in determining his immigration status.

As a corollary, counsel contends that since section 202 has no bearing on the issue, we cannot consider the beneficiary as "having been born" in Canada as provided in section 202(b)(3). Therefore, although presently a *citizen* of Canada, the beneficiary does not fall within the "special immigrant" category [2] because he was not *born* in any independent *foreign* country of the Western Hemisphere as required by section 101(a)(27)(A). He was born in the United States.

Moreover, according to counsel, arbitrarily assigning the beneficiary to the Western Hemisphere as a "special immigrant" on the basis of a statutory provision not intended to have that effect, ignores a fundamental purpose of the statute, the reunion of families.

Finally, counsel insists that since there are no specific provisions in the Act which settle the beneficiary's immigration status, he should fall within the general provisions of the statute, specifically, section 201(a). As noted earlier, that section includes within its 170,000 annual limitation *all* aliens except "special immigrants" and "immediate relatives." [3]

---

[1] The 170,000 annual limitation is contained in section 201(a) of the Act. This limitation applies to all categories of aliens except "special immigrants" and "immediate relatives."

[2] Under section 101(a)(27)(A), the term "special immigrant" means—"an immigrant who was born in any independent foreign country of the Western Hemisphere or in the Canal Zone and the spouse and children of any such immigrant, if accompanying, or following to join him . . .

[3] Section 201(b) defines "immediate relative" as "the children, spouses, and parents of a citizen of the United States . . ." Since the petitioner in this case is the brother of the beneficiary, this category obviously has no applicability here.

Inasmuch as the beneficiary makes no claim to immediate relative status and since he should not be categorized as a "special immigrant", counsel concludes that he is eligible for a preference within the worldwide quota limitation under section 203.

Although section 202(a) mandates that each alien accorded such a preference shall also be charged to a *specific foreign* state within the Eastern Hemisphere, counsel urges us to by-pass this requirement and to simply charge the beneficiary to the overall 170,000 limitation. We have concluded that counsel's argument has surface plausibility but is not acceptable.

The language of section 202(b) which immediately precedes the rules on chargeability begins with the words, "For the purposes of this *Act* . . ." and not with the language, "For the purposes of section 202(a) . . ." (Emphasis added.) As counsel has noted, this phrase appears to have been lifted, without modification, from the prior statute. See section 12(a) of the "Immigration Act of 1924" (43 Stat. 153; 8 U.S.C. § 201). Therefore, it is possible that the Congress intended no change in the effect of this language. Thus, under the prior statute, a United States citizen who took on Canadian citizenship and thereby expatriated, was attributable to Canada for *all* purposes, including his designation as a nonquota immigrant. Giving an analogous scope to the phrase, "For the purposes of this Act" in the present immigration statute would also assign such an expatriate to Canada. As a consequence, he would share with all other Canadian citizens the status of "special immigrant" as defined by section 101(a)(27)(A).

Even if we were to accept, for the sake of argument, counsel's contention that the Act as written does not cover the beneficiary's particular situation, we must rely on general principles of statutory construction in determining what Congress may have intended in this statutory vacuum.[4]

As counsel points out, the statutory scheme no longer contemplates a numerical allocation of visas per country. Nonetheless, it does impose numerical limitations on two broad categories, Eastern and Western Hemispheres. Thus, all aliens are ascribable to one hemisphere or the other. Those aliens attributable to the Eastern Hemisphere are further ascribed, for purposes of the 20,000 limitation per country, to a *specific country*. See section 202(a). Under the interpretation urged, this requirement of section 202(a) would be ignored in the beneficiary's case. An interpretation of the statute which intentionally by-passes a critical portion of the legislation appears to us unreasonable.

Again, under general principles of statutory interpretation, if there

---

[4] Research into the legislative history of the present Act, the Immigration Act of 1924, and those statutes immediately preceding the 1924 Act has yielded no additional information on the narrow issue raised in this case.

were no reference, whatsoever, in the present statute to an alien in the beneficiary's posture, the history of the legislation indicates that, in the past, such an alien would have been ascribable to Canada for all purposes. In the absence of any further congressional comment on the issue, it is as reasonable to assume that the Congress intended that the alien continue to be treated as heretofore, as it is to assume an intention which contradicts the overall statutory scheme. As it happens, in the one instance in the present statute where an "alien born in the United States" is referred to, the Congress has described him, for immigration purposes, as a native of the country of which he has become a citizen. See section 202(b)(3).

Finally, we note that Congress, inadvertently or otherwise, did not carve out preferences for aliens born in the Western Hemisphere. Whether or not, in the eyes of the law, the beneficiary was born in the United States, as a *matter of fact and of law*, he was not born in the Eastern Hemisphere. With the exception of those aliens who qualify for alternate chargeability pursuant to section 202(b), see *Matter of Chatterton*, 14 I. & N. Dec. 82 (BIA 1972); *Matter of Ponce de Leon*, 14 I. & N. Dec. 106 (BIA 1973); *Matter of Ascher*, 14 I. & N. Dec. 271 (BIA 1972 and 1973); *Matter of Monteran*, 11 I. & N. Dec. 717 (D.D. 1966) [5], all other immigrants who were *not* born in the Eastern Hemisphere must do without preferences under the statutory scheme. To accord a preference in this case would create a special favored category among those born in the Western Hemisphere.[6]

While the lack of a preference system for the Western Hemisphere is

---

[5] Both counsel for the petitioner and the district director have made reference to *Matter of Monteran*, supra, a 1966 decision of a district director which is not binding on this Board. In that case, a native born citizen of the United States became a citizen of France. The issue was whether the language of section 245(c) of the Act, which bars natives of the Western Hemisphere from adjustment of status under section 245(a), applied to the applicant. On the basis of the legislative and statutory history of section 245(c), the district director concluded that the applicant was eligible for adjustment. While the result reached in *Monteran* is entirely consistent with the result we reach here, in that the alien was ascribed for purposes of section 245 eligibility to his newly acquired country of France, the decision did not address the issue now raised, and furnishes little guidance.

Since the question of this beneficiary's eligibility under section 245 is not before us, we will venture no opinion at this time. We note, however, that this issue could raise very real questions, in light of the rationale of our present decision.

[6] The creation of such a category appears particularly anomalous in light of the regulations on the revocation of the approval of petitions. Under 8 CFR 205.1(a)(9), the approval of a petition is *automatically* revoked—

Upon the beneficiary's acquisition of citizenship in an independent country of the Western Hemisphere or, if he is stateless, upon his taking up residence in such a country or the Canal Zone, in the case of a beneficiary who was born in the United States and a petition to accord preference status under section 203(a)(1),(2),(4), or (5) of the Act has been previously approved on the basis of his alternate chargeability under

arguably a deficiency in the Immigration and Nationality Act, if the Congress recognizes it as such, it can correct the problem by amending the statute.

We decline to resolve the beneficiary's case in a manner which would, in effect, preempt the Congress in the creation of preferences in this area.

**ORDER:** The appeal is dismissed.

---

section 202(b)(3) of the Act to a foreign state in the Eastern Hemisphere or a dependent area of such foreign state of which he was a citizen or subject at the time of approval or in which he then had his residence if he was then stateless.

Hence, an expatriate who has previously been granted fifth preference status pursuant to section 202(b)(3) will automatically lose that status if he acquires Canadian citizenship before coming to the United States. According to counsel's argument, the same expatriate can simply reapply for fifth preference as a Canadian citizen and be accorded that status a second time under an alternate theory.